# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| SPENCER EAST BROOKFIELD ) | |
| REGIONAL SCHOOL DISTRICT, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff United States of America ("United States") alleges:

1.      This action is brought by the United States against Spencer East Brookfield Regional School District ("Defendant") to enforce the statutory and regulatory provisions of Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12111-12117, as amended, which incorporates, through 42 U.S.C. § 12117(a), the powers, remedies, and procedures set forth in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et. seq.

2.      Defendant's denial of the complainant's reasonable accommodations request, and termination of her based on her disability, violates the ADA.

3.      This Court has jurisdiction over this action under 42 U.S.C. §§ 12117(a) and 2000e-5(f), and 28 U.S.C. §§ 1331 and 1345.

4.      This Court has authority to grant a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and authority to grant equitable relief and monetary damages pursuant to 42 U.S.C. § 12117(a).

5.      Venue is proper under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because Defendant is located in this judicial district and the events and omissions giving rise to this action occurred in this judicial district.

6.      Defendant is an employer within the meaning of 42 U.S.C. § 12111(5), and a covered entity within the meaning of 42 U.S.C. § 12111(2) and 29 C.F.R. § 1630.2.

## FACTS

### A.      The Complainant

7.      The complainant has physical impairments that substantially limit major life activities, *e.g.,* lifting and bending, and the operation of major bodily functions, *e.g.,* the musculoskeletal function; and/has a record of such impairments.

8.      The complainant worked for Defendant as an education aide/paraprofessional for approximately 12 years.

9.      In 2012, the complainant was diagnosed with a torn rotator cuff, rotator cuff disease, a shoulder tear, joint pain, and loose bodies in the shoulder.  She suffered from pain and a restricted range of motion.

10.      In 2016, the complainant was diagnosed with degenerative osteoarthritis in her knees, bursitis, and a torn meniscus.

11.      At the times relevant to the violation, the complainant suffered from chronic pain limiting her ability to lift, walk, climb stairs, squat, sit, and bend.

### B.      Defendant's Policies and Practices Related to Restraining Students

12.      While working for Defendant, select employees may occasionally be called upon to physically restrain a student when the student's behavior is perceived to pose a threat of assault or imminent serious physical harm.

2

13.     Pursuant to Massachusetts Department of Elementary and Secondary Education ("DESE") regulations, only school district employees who have received specific training ("restraint training") may physically restrain students.

14.     The DESE regulations do not require that paraprofessionals take restraint training.

15.     Instead, the DESE regulations provide that the principal of each public education program (or the principal's designee) shall identify program staff who are authorized to assist in ensuring the proper administration of physical restraint.

16.     Before the 2016-2017 school year, Defendant complied with DESE's regulations by soliciting employees to take the restraint training voluntarily.

17.     On July 11, 2016, Defendant notified paraprofessionals, including the complainant, of Defendant's decision that all paraprofessionals must henceforth take restraint training.

18.     Defendant continued to allow volunteers to take the restraint training.

19.     The restraint training is two days and includes performing physical simulations of restraints.

20.     Upon completing the restraint training, employees are certified to physically restrain students.

21.     The certification is valid for one year, and employees must retake the restraint training annually to maintain certification.

22.     Only employees who have a current updated certification are permitted to physically restrain students.

23.     In the elementary school where the complainant worked, only approximately three of 25 incidents of physical restraint that occurred during the 2016-2017 school year

involved a paraprofessional.

24.     In 2016-2017, there were many restraint-certified staff available to restrain children at the elementary school where the complainant worked.

25.     The available restraint-certified staff in 2016-2017 included 27 employees on a Crisis Team who were certified to perform restraints.

26.     The Crisis Team included staff available to respond throughout the school, and additional staff disbursed among the school's three floors.

27.     A Crisis Team member was involved in each of the approximately 25 incidents of physical restraint that occurred during the 2016-2017 school year.

28.     In the incidents of physical restraint that occurred during the 2016-2017 school year, teachers most typically performed the restraints.

29.     It was not until 2016-2017 that Defendant modified the job description for the paraprofessional position to state that a paraprofessional's job includes restraint and de-escalation training and implementing restraints.

30.     Defendant's records show that the restraint certifications for some employees lapsed for the 2016-2017 school year.

31.     Employees with lapsed restraint certifications are not permitted to perform restraints under Massachusetts law.

32.     Defendant failed to ensure that all employees who are trained to perform restraints maintain their certification.

**C.     The Complainant's Request for Accommodation and Subsequent Termination**

33.     After the complainant received the July 11, 2016 email notifying her that all paraprofessionals in the school district must complete restraint training, she consulted with her

4

doctor because she was concerned that her disabilities might impact her ability to administer physical restraints.

34.    The complainant submitted to Defendant multiple notes from her doctor stating that she could not physically restrain students.

35.    The complainant requested that Defendant excuse her from restraining children and from taking training, which required performing physical simulations of restraints.

36.    The complainant's accommodation requests were the subject of conferences Defendant held with the complainant on August 18, 2016 and October 5, 2016.

37.    During those conferences, the complainant informed Defendant that she was scheduled to have knee surgery on October 24, 2016.

38.    During those conferences, the complainant informed Defendant that it would be up to her doctor as to whether she would be able to restrain children after she recovered from the surgery.

39.    Defendant refused to provide the complainant with the reasonable accommodations she requested.

40.    Defendant instead terminated the complainant on October 17, 2016, stating in the termination letter to the complainant that, "your employment with the School District is terminated effective immediately because you are unable to perform the essential functions of your job," referring to being available to physically restrain children.

41.    The complainant suffered emotional distress because of Defendant's actions.

42.    On or about November 23, 2016, the complainant filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant discriminated against her in violation of the ADA by denying her reasonable

accommodations and by terminating her because of her disability.

43.     Pursuant to 42 U.S.C. § 2000e-5, incorporated by reference in 42 U.S.C. § 12117(a), the EEOC investigated the complainant's charge and found reasonable cause to believe that Defendant discriminated against her in violation of the ADA.

44.     After the EEOC's conciliation efforts failed, the EEOC referred the matter to the United States Department of Justice.

45.     All conditions precedent to the filing of this action have been performed.

## CAUSE OF ACTION

### Violation of Title I of the Americans with Disabilities Act

46.     The allegations of the foregoing paragraphs are hereby incorporated by reference.

47.     Title I of the ADA, 42 U.S.C. §§ 12111−12117, and its implementing regulation, 29 C.F.R. Part 1630, prohibit covered entities, such as Defendant, from discriminating against qualified individuals on the basis of disability in regard to the discharge of employees and other terms, conditions, and privileges of employment, including by failing to provide reasonable accommodations to qualified employees with disabilities.

48.     The complainant is a person with a disability because she has physical impairments that substantially limit one or more major life activities, including lifting and bending, and/or the operation of major bodily functions, *e.g.,* the musculoskeletal function; and/or has a record of such impairments.  42 U.S.C. § 12102; 29 C.F.R. § 1630.2(g)-(k).

49.     During all relevant times, the complainant was qualified for the paraprofessional position because she could perform the essential functions of the job with reasonable accommodations.  42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m).

50.     Defendant discriminated against the complainant in violation of Title I of the ADA, 42 U.S.C. §§ 12111-12117, and its implementing regulation, 29 C.F.R. Part 1630, by not making reasonable accommodations to the known physical limitations of the complainant, and then terminating her on the basis of disability.  42 U.S.C. §§ 12102, 12111, 12112; 29 C.F.R. §§ 1630.2, 1630.4, 1630.9.

51.     When the request for reasonable accommodations was made and the complainant was terminated, Defendant knew of the complainant's physical limitations.

52.     Reasonable accommodations include "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position;" and "[j]ob restructuring; . . . appropriate adjustment or modifications of . . . training materials, or policies; . . . and other similar accommodations for individuals with disabilities." 29 C.F.R. § 1630.2(o)(1)(ii), (2)(ii).

53.     Defendant could have reasonably accommodated the complainant's physical limitations.

54.     Pursuant to Title I's implementing regulation, "[t]o determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

55.     As a result of Defendant's discriminatory conduct, the complainant suffered and continues to suffer damages, including emotional distress.

## **Prayer for Relief**

WHEREFORE, the United States prays that this Court:

(a)    grant judgment in favor of the United States and declare that Defendant has violated Title I of the ADA, 42 U.S.C. §§ 12111-12117, and its accompanying regulation;

(b)    enjoin Defendant and its agents, employees, successors and all persons in active concert or participation with it, from engaging in discriminatory employment policies and practices that violate Title I of the ADA;

(c)    require Defendant to modify its policies, practices, and procedures as necessary to bring its employment practices into compliance with Title I of the ADA and its implementing regulations;

(d)    order Defendant to train its supervisors and human resource staff regarding the requirements of Title I of the ADA;

(e)    award the complainant:

   (i)    back pay with interest;

   (ii)    the value of any lost benefits with interest;

   (iii)    compensatory damages, including damages for emotional distress, for injuries suffered as a result of Defendant's failure to comply with the requirements of Title I of the ADA pursuant to and within the statutory limitations of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a; and

(f)    order such other appropriate relief as the interests of justice require, together with the United States' costs and disbursements in this action.

## Jury Demand

The United States hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of

Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.


Respectfully submitted,

For the United States of America:


ANDREW E. LELLING
United States Attorney


TOREY B. CUMMINGS (BBO No. 664549)
Assistant United States Attorney
United States Attorney's Office
District of Massachusetts
John Joseph Moakley Courthouse
1 Courthouse Way, Suite 9200
Boston, Massachusetts, 02210
Telephone: (617) 748-3281

Date:  July 30, 2020

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

CYNTHIA M. MCKNIGHT
Deputy Assistant Attorney General
Civil Rights Division

REBECCA B. BOND
Chief
KATHLEEN P. WOLFE
Special Litigation Counsel
AMANDA MAISELS
Deputy Chief


*/s/Elaine Grant*
ELAINE GRANT (DC Bar No. 457163)
Senior Trial Attorney
United States Department of Justice
Civil Rights Division
Disability Rights Section
950 Pennsylvania Avenue, N.W.
4CON Room 9.1110
Washington, DC  20530
Telephone:  (202) 307-1444
Facsimile:  (202) 307-1197
Email:  Elaine.Grant@usdoj.gov